IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHADRICK PETER WILLIAMS,<br><br>    Petitioner,<br><br> vs.<br><br>S.W. ORNOSKI,<br><br>    Respondent. | No. C 06-1142 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Shadrick Peter Williams (hereinafter "Petitioner"), a prisoner of the State of California who is incarcerated at Sierra Conservation Center, in Jamestown, California, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof and Petitioner filed a traverse. For the reasons stated below, the petition is denied on the merits.

## PROCEDURAL BACKGROUND

In March 2002, Petitioner was charged with possession for sale and transportation of cocaine base, cocaine, and heroin in San Mateo County Superior Court. He moved to suppress the drugs as the product of a consent search that was tainted by an illegal detention. *People v. Williams*, No. A105683, slip op. at 1 (Cal. Ct. App. May 27, 2005) (Resp. Ex. B). The trial

court granted the motion to suppress and dismissed the case without reaching the remaining issues.  After an appeal by the People, in April 2003, the California Court of Appeal reversed the dismissal of the charges.  *People v. Williams*, No. A098662, 2003 Cal. App. Unpub. LEXIS 3616 (Cal. Ct. App. Apr. 10, 2003).

On November 3, 2003, following a retrial, a jury convicted Petitioner of possession for sale and transportation of cocaine base, cocaine and heroin.  On January 29, 2004, the trial court sentenced Petitioner to eleven years imprisonment.  Petitioner appealed to the California Court of Appeal, which affirmed Petitioner's conviction on May 27, 2005, and to the Supreme Court of California, which denied Petitioner's petition for review on August 10, 2005.  Petitioner filed the instant petition on February 16, 2006.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized as follows:

> At 9:45 p.m. on February 6, 2002, South San Francisco Police Officer Sanders was dispatched to the Magnolia Senior Center (Center), in response to a report of a disturbance at the Center involving a mother and daughter.  Sanders "was told that somebody had been hit in the head with a cellular phone."
>
> As Sanders pulled into the parking lot of the Center, he heard a female "yelling profanities to someone in the area."  He did not at first see who was yelling, but he saw a Ford van double-parked in the lot.  Saunders pulled up directly behind the van, so the van could not possibly back out, and got out of his patrol car.  He saw the woman running from the Center towards the van.  The woman was "yelling" and Saunders assumed she was the woman he had heard when he first arrived.
>
> Saunders spoke to the woman as she reached the passenger side of the van.  The woman was "very excited and very [much] in a hurry to leave."  She denied being involved in the disturbance, and claimed she was in a hurry because she was late for work.
>
> . . . .
>
> While he was talking to the woman, Saunders saw defendant sitting behind the wheel of the van.  Saunders spoke to defendant to see if he knew the identity of the woman who had been yelling, and "why they were at the Magnolia Senior Center."  Defendant told Saunders he had driven the woman to the Center so she could pick up mail, but defendant could not tell Saunders the woman's name.

2

. . . .

Officer Campbell [and Officer Chetcuti] . . . arrived at the scene as Officer Saunders was talking to the woman and the defendant was sitting in the van. In apparent contradiction to Saunders' testimony that his patrol car prevented defendant from backing out of the parking lot, Campbell admitted on cross-examination that defendant "had access to pull out of the driveway."

. . . .

The officers asked defendant for identification. He turned over a valid California driver's license, which showed "clear" on a computer records check. The driver's license was not initially returned to the defendant.

In the course of the investigation, the female provided the officers with "numerous names before [they] finally found her true identity." Defendant told the officers he did not know the woman's name, but he did know her purse was in the van. Defendant handed the purse to Campbell and Chetcuti, who looked through the purse for identification. They found two glass pipes used for smoking controlled substances.

After the pipes were found the woman was arrested. Campbell asked defendant to get out of the van. He did not tell defendant he was being detained. Campbell believed there might be drugs or drug paraphernalia in the van, due to the discovery of the pipes in the purse and the fact the woman had obviously been inside the van. Campbell asked defendant if there were any drugs or paraphernalia in the van, and he said no.

Campbell asked defendant for permission to search him and to search his van. Defendant replied "that he did not have any drugs inside the car, and that I was free to check his person and the vehicle." As Campbell began to pat the defendant down, defendant told Campbell there was cocaine and heroin in a black vinyl case behind the left rear passenger seat. Campbell opened the case and discovered individually wrapped bindles of cocaine and heroin, drug paraphernalia, and scales. Defendant was arrested and Campbell found more bindles of cocaine and heroin in defendant's jacket."

Campbell's trial testimony amplifies these facts. As Campbell started to pat defendant down, defendant "made a spontaneous statement of, quote, I have some cocaine and heroin in the van." Defendant "directed" Campbell to the black case containing the drugs and paraphernalia. Campbell then arrested defendant and found more drugs in his jacket pockets, as well as $749 cash.

Campbell then read defendant his *Miranda* rights. He asked defendant if he understood those rights. Defendant "said he understood his rights and wanted to give [Campbell] a statement." Defendant told Campbell "basically that he had been in the, quote, game for a long time and that it was time for him to come clean," and "that the drugs in the car were solely his and that he had been selling drugs for approximately four years." Defendant gave "pretty much a detailed statement as to . . . how he packaged the drugs, how much he sold them for, stuff

3

like that."

. . . .

Campbell transported defendant to the police department, where he took a second statement from defendant at 11:30 p.m. At the outset of the statement Campbell reminded defendant that "[w]e've already read you your *Miranda* rights . . . ." Defendant acknowledged that he had already been read his rights and agreed to talk to Campbell. In this second statement defendant admitted he had been selling cocaine, crack cocaine, and heroin for four years. This statement was audiotaped and played for the jury.

(Resp. Ex. B at 2-5) (citing *Williams*, 2003 Cal. App. Unpub. LEXIS 3616, at *2-6).

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1)

4

correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000).

**DISCUSSION**

Petitioner claims that the admission of two statements he made after receiving his *Miranda* warnings violated his Fifth and Fourteenth Amendment rights.[1]  Petitioner argues that his statement to the police at the scene of the arrest, immediately after receiving the warnings, should not have been admitted because it was made involuntarily.  He also contends that a second statement he made to the police at the station house should not have been admitted

---

[1] Petitioner does not challenge the admissibility of the spontaneous statement he made during the search of his person before he was read his *Miranda* rights.  To the extent that Petitioner wanted to make such a claim, it would not be exhausted and, as such, could  not be considered in this review.  28 U.S.C. § 2254(b), (c).

because "the initial taint from the first involuntary waiver of rights continued through the second interrogation at the station." (Traverse at 22). For the reasons discussed below, neither of these claims can be substantiated by the record. Accordingly, the petition for a writ of habeas corpus must be denied.

In *Miranda v. Arizona*, 384 U.S. 436 (1996), the Supreme Court held that certain warnings must be given, advising a suspect of his rights, before a suspect's statement made during custodial interrogation can be admitted in evidence. Once properly advised of his rights, an accused may waive them voluntarily, knowingly and intelligently. *See Miranda*, 384 U.S. at 475. A valid waiver of *Miranda* rights depends upon the totality of the circumstances, including the background, experience and conduct of the defendant. *See United States v. Bernard S.,* 795 F.2d 749, 751 (9th Cir. 1986). A showing that the defendant knew his rights generally is sufficient to establish that he knowingly and intelligently waived them. *See Paulino v. Castro*, 371 F.3d 1083, 1086-87 (9th Cir. 2004). To be voluntary, the relinquishment must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The California Court of Appeal found no evidence of an involuntary waiver that would justify excluding Petitioner's two statements from trial. (Resp. Ex. B at 5-6). In so ruling, the Court of Appeal applied the federal standard set forth above for determining whether Petitioner waived his *Miranda* rights knowingly, voluntarily, and intelligently. (Resp. Ex. B at 6). Because the Court of Appeal applied the correct federal standard, its decision was not "contrary to" clearly established federal law within the meaning of 2254(d)(1). *See Williams*, 529 U.S. at 413.

The California Court of Appeal also reasonably applied federal law in denying

6

Petitioner's claim.  The court found that "[c]ases have repeatedly found an implied *Miranda* waiver where the accused, having been read his rights and indicated he understood them, proceeded to speak with police officers without requesting an attorney - especially when the defendant knew the interview was being recorded."  (Resp. Ex. B at 6).  The court noted that there was no evidence of police coercion; rather Petitioner had experience dealing with the criminal justice system and despite that experience, he expressed a willingness to talk with the officers.  (Resp. Ex. B at 6).  Since the second statement at the station house was made less than two hours after the statement at the scene of the arrest, the court found "substantial evidence that the defendant's waivers of his *Miranda* rights were free and voluntary."  (Resp. Ex. B at 6).

**A.    Admissibility of the Statement at the Scene of the Arrest**

After the police approached his van, Petitioner retrieved his female passenger's purse from inside his van and handed it to Officer Campbell.  After finding drug paraphernalia in the purse, Petitioner consented to a search of his van and person.  While being patted down, Petitioner told Campbell that there were drugs in the car and where the drugs were.  Campbell retrieved the drugs, then arrested Petitioner and read the *Miranda* warnings.  Petitioner stated that he understood his rights, but that he wanted to make a statement anyway.  He admitted that the drugs were his, that he had been selling drugs, and described other details about selling drugs.

The Court of Appeal reasonably found that Petitioner's statement after receiving his *Miranda* warnings was admissible because his waiver of such rights was voluntary.[2]  *Miranda*,

---

[2] Here, Petitioner only challenges the voluntariness of his waiver, and not whether it was knowing and intelligent.  In the event that Petitioner was challenging the knowing and intelligent quality of his waiver, he would not succeed.  Petitioner's previous experience with the criminal justice system and the fact that he replied affirmatively when asked if he understood his rights indicated that his waiver of them was knowing and intelligent.  *See, e.g., Paulino v. Castro*, 371 F.3d at 1086-87 (finding that a showing that the defendant knew his rights generally is sufficient to establish that he knowingly and intelligently waived them).

7

384 U.S. at 475.  Respondent has the burden of proving voluntariness and can meet this obligation by showing that, after a careful consideration of relevant factors, the totality of circumstances indicates that the waiver was the "product of free and deliberate choice. . . ." *Moran*, 475 U.S. at 421.  Factors indicating voluntariness can include, but are not limited to, degree of police coercion, defendant's education, and defendant's maturity.  *Withrow v. Williams*, 507 U.S. 680, 693 (1993).  Also, defendant's experience with the criminal justice system will be considered.  *See Bernard S.*, 795 F.2d at 751.

        The record is devoid of facts that would indicate coercion.  After receiving his warnings, Petitioner nevertheless expressed that he understood his rights and wanted to make a statement.  Petitioner suffered no physical abuse, promise of leniency, threats or other psychological ploy.  Further, by saying "it was time for him to come clean" after receiving *Miranda* warnings, Petitioner expressed a willingness to discuss his offenses with the officers.  (Mem. P. & A. at 6).  As "a waiver cannot be held involuntary absent official compulsion or coercion," the analysis of voluntariness need not continue to the other factors.  *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).  Nevertheless, the fact that Petitioner is 53 years-old, has obtained his high-school equivalency degree, and has prior experience with the criminal justice system, including prior convictions for related offenses, further dispels any doubt as to the voluntariness of his waiver.  The lack of coercion and Petitioner's personal characteristics substantiates the voluntariness of Petitioner's waiver.  *See id.*

        Petitioner urges that the circumstances surrounding his statement at the scene of the arrest were coercive and illustrates this point by referencing to the fact that he was surrounded by "a show of force (three armed policemen in three marked patrol cars); by all but blocking him from physically driving off the premises; by depriving him of his identification . . . and by asking him to leave his van and patting him down. . . ." (Traverse at 22).  In making this argument, Petitioner misunderstands the relevance of these facts.  Taken together, they can be used to show

8

that the Petitioner was in "custody" at the time the statement was made; and thus that *Miranda* warnings were required. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The record is clear that the police gave Petitioner *Miranda* warnings, and that Petitioner voluntarily waived those rights. There is no evidence that Petitioner's will was overborne such that his statements should be considered involuntary.

### B.  Admissibility of the Statement at the Station House

After his arrest, Petitioner was transported to the station house where he made a second statement, identical to the first statement at the scene of the arrest; this second statement was audiotaped. Before obtaining this statement, Officer Campbell reminded Petitioner that *Miranda* warnings had already been issued. Petitioner acknowledge that he had already received the appropriate warnings and agreed to talk to Campbell.

Petitioner argues that his statement to the police at the station is inadmissible because it was tainted by his earlier waiver of his *Miranda* rights, which waiver Petitioner contends was invalid.[3] Because Petitioner's waiver was, for the reasons discussed above, voluntary, there was nothing to "taint" the statement made at the station.

The Court of Appeals reasonably found that Petitioner's waiver of his *Miranda* rights was knowing, voluntary and intelligent. *Miranda*, 384 U.S. at 475. The evidence in the record surrounding Petitioner's waiver establishes the voluntariness of the statement at the scene of the arrest. *Connelly*, 479 U.S. at 170. Because the statement at the scene of the arrest was

---

[3] Petitioner "does not challenge his second, recorded statement to police as having been obtained without any advisement of *Miranda* . . . ." (Traverse 23 n.8.) In any event, in *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir. 2005), *amended by* 416 F.3d 939 (9th Cir. 2005), the Ninth Circuit determined that statements made sixteen hours after original *Miranda* warnings were sufficiently close in time that no re-advisement was required. Here, less than two hours elapsed between the *Miranda* advisement and Petitioner's second statement at the station house. Thus, readvisement was not necessary and the record reflects that Petitioner indicated that he remembered his *Miranda* rights in any event.

admissible, the second statement at the station house was also admissible as it cannot be said to have been tainted by his earlier waiver. Accordingly, the Court of Appeals' finding, that both statements were admissible was neither contrary to nor an unreasonable application of federal law.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment for Respondent and close the file.

IT IS SO ORDERED.

DATED: June 10, 2008

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SHADRICK P WILLIAMS,

        Plaintiff,

  v.

S W ORNOSKI, WARDEN et al,

        Defendant.

                                        /

Case Number: CV06-01142 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 10, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Shadrick P. Williams
V-22519
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

Dated: June 10, 2008

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk